# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHANNON J. WRIGHT (01),<br><br>Defendant. | Case No. 11-40024-01-DDC |

## MEMORANDUM AND ORDER

On April 15, 2019, the court conducted a hearing on defendant Shannon J. Wright's Motion to Dismiss Petition to Revoke Supervised Release (Doc. 73). In short, Mr. Wright's motion contends the government violated his right to counsel and his right to be present at sentencing when it modified Mr. Wright's supervised release term by requiring him to reside at a residential reentry center for up to 120 days.

At the hearing, Mr. Wright testified that—although he signed a waiver of his right to a hearing and assistance of counsel—he did not read the waiver before he signed it. And, Mr. Wright testified that he signed the waiver at his case manager Cliff Beckmann's request. In response, the government moved to continue the evidentiary hearing to secure Mr. Beckmann's testimony. Mr. Beckmann's testimony, the government argued, could be secured by telephone because he works at a Bureau of Prisons facility in Greenville, Illinois, where Mr. Wright then resided. Mr. Wright objected, contending that Mr. Beckmann's appearance by telephone would violate his constitutional rights. Instead, Mr. Wright asserted, Mr. Beckmann must testify in person in the courtroom.

The court granted the government's motion to continue the evidentiary hearing and directed the parties to brief the question whether Mr. Beckmann must testify in person. On April 18, 2019, the government filed a "Motion for Order for Authorized Testimony by Telephone of Government Witness." Doc. 83. And Mr. Wright filed a Response. Doc. 84.

After reviewing the parties' filings, the court now grants the government's motion. But it also directs the government to confer with Mr. Beckmann and secure, if reasonably feasible, Mr. Beckmann's testimony by videoconference. The court explains its reasoning, below.

## I. Analysis

The court addresses the government's motion in three parts. First, the court considers the constitutional rights at issue when a party introduces hearsay evidence at a revocation hearing. Second, the court addresses the balancing test adopted by the Circuit; it controls the analysis whether the government may introduce hearsay evidence at a revocation hearing in lieu of an adverse witness's personal presence. Third, the court applies the balancing test to the present circumstances, concluding that it favors granting the government's motion.

### A. Although Mr. Beckmann's proposed testimony may be hearsay, its use at a revocation hearing implicates the Fifth Amendment Due Process Clause, not the Sixth Amendment Confrontation Clause

Mr. Wright first argues that the Tenth Circuit classifies telephonic testimony as hearsay under Federal Rule of Evidence 801. Doc. 84 at 2 (citing *United States v. Sunrhodes*, 831 F.2d 1537, 1544 n.1 (10th Cir. 1987)). In response, the government contends, Mr. Beckmann's testimony is not hearsay—rather, Mr. Beckmann will testify, just not in the courtroom.

Both parties land glancing blows to this critical issue. That is, even if the proposed telephonic testimony is hearsay—a conclusion *Sunrhodes* supports—the Tenth Circuit has reiterated that "'the usual rules of evidence need not be applied' in revocation hearings." *United*

*States v. Henry*, 852 F.3d 1204, 1206 (10th Cir. 2017) (quoting Fed. R. Crim. P. 32.1 advisory committee's note to 1979 amendment). Justice—then a Circuit Judge—Gorsuch explained that the use of hearsay in revocation proceedings trips no Sixth Amendment Confrontation Clause alarms, nor does it necessarily infringe on defendant's Fifth Amendment Due Process rights:

> Indeed, the Supreme Court and [the Tenth Circuit] have long allowed hearsay in supervised release proceedings: sometimes the government will use hearsay in arguing for revocation; sometimes the defendant will use hearsay in arguing against revocation (as [the defendant] himself did in this case). In neither event are confrontation or due process rights necessarily denied, for under settled precedent the Confrontation Clause of the Sixth Amendment does not apply to supervised release revocation proceedings and the due process guarantees associated with these proceedings are "minimal." *See Morrissey v. Brewer*, 408 U.S. 471, 485, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (describing due process guarantees at revocation hearings as "minimal" and explaining that "the process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial"); *see also* Fed. R. Evid. 1101(d)(3) (federal rules of evidence do not apply in proceedings "granting or revoking probation or supervised release"); *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 366, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998); *Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010) (the Sixth Amendment Confrontation Clause does not apply to supervised release proceedings).

*Id.* at 1206–07. So, Mr. Beckmann's testimony by video or telephone—although hearsay—does not infringe on Mr. Wright's Sixth Amendment rights at a revocation hearing in supervised release context. As the next section explains, the question, instead, is whether the government's plan to present video or telephone testimony would infringe on Mr. Wright's "minimal" due process rights.

**B.  The Tenth Circuit applies Federal Rule of Criminal Procedure 32.1(b)(2)(C)'s balancing test to decide whether hearsay evidence infringes on a defendant's due process rights to confront and cross-examine an adverse witness**

"Because the Sixth Amendment does not apply to revocation hearings, the confrontation right in a revocation hearing is a Fifth Amendment due process protection." *United States v. Murphy*, No. 18-5052, 2019 WL 1934675, at *1 (10th Cir. May 1, 2019) (citations omitted).  So, a defendant at a revocation hearing is entitled to "'the minimum requirements of due process,' including 'the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing confrontation).'" *Id.* (quoting *Morrissey*, 408 U.S. at 488–89). And, Federal Rule of Criminal Procedure 32.1 "stems from *Morrissey*" and "was designed to track the due process rights established for parolees in [*Morrissey*]." *Id.* (quoting *United States v. Taveras*, 380 F.3d 532, 536 (1st Cir. 2004)); *United States v. Jones*, 818 F.3d 1091, 1099 (10th Cir. 2016) ("Rule 32.1 'codif[ied] due process guarantees that apply to revocation hearings.'" (quoting *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013))).

Before 2016, the Tenth Circuit had employed a reliability test when to decide whether to admit hearsay testimony at revocation proceedings.  *See Jones*, 818 F.3d at 1098.  But, in *Jones*, the Circuit adopted Rule 32.1(b)(2)(C)'s balancing test. *Id.* at 1099–100.  Thereafter, this test required the court to "determine whether the 'interest of justice does not require the witness to appear' by balancing (1) 'the person's interest in the constitutionally guaranteed right to confrontation' against (2) 'the government's good cause for denying it.'" *Id.*  The Tenth Circuit has explained that the "'reliability' of the hearsay statements and the defendant's 'interest in cross-examination' are relevant to the defendant's interest in confrontation." *Murphy*, 2019 WL 1934675, at *2 (citing *Jones*, 818 F.3d at 1100–01).

### C. The Rule 32.1(b)(2)(C) balancing test favors the government

The court first considers Mr. Wright's interest in the constitutionally guaranteed right to confrontation. Mr. Wright asserts that he is entitled to an in-person confrontation because he faces a two-year custody sentence on the violations he is accused of committing. So, Mr. Wright argues, his supervised release hearing implicates Sixth Amendment rights tantamount to trial rights because he faces a trial-like penalty. And Mr. Beckmann's testimony likely will provide his perspective on a key issue—*i.e.*, whether Mr. Wright signed his waiver form knowingly and voluntarily.

But, here, Mr. Wright's interest is lessened for three reasons. First, as discussed, Mr. Wright's reliance on Sixth Amendment protections is misplaced. Binding precedent differentiates between supervised release proceedings and trial. They hold that Mr. Wright's confrontation interest is less compelling because it is a revocation hearing, not a trial. *See Henry*, 852 F.3d at 1207; *see also Jones*, 818 F.3d at 1102 ("[O]ur case law holds that the Sixth Amendment does not apply to revocation hearings."). Mr. Wright cannot sweep those holdings aside merely because he disagrees with them.

Second, Mr. Wright's interest also is lessened because the government offered to secure Mr. Beckmann's live testimony during the evidentiary hearing. The government isn't trying to introduce Mr. Beckmann's testimony by having a witness testify what Mr. Beckmann said. To the contrary, the government plans to present Mr. Beckmann's testimony live, by standard form Q&A. Then, Mr. Wright's counsel will have the opportunity to do the same—using precisely the same medium as government's counsel. This method, assuring equal standing, nullifies Mr. Wright's hearsay concern and weighs in the government's favor under the Rule 32.1 balancing test. The government's proposal also squares with a long line of cases. *See United States v.*

*Jordan*, 742 F.3d 276, 279 (7th Cir. 2014) ("For example, where live testimony would be difficult or burdensome to obtain, confrontation need not be face-to-face. Video conferencing could allow a distant witness to testify and face cross-examination with minimal inconvenience and expense. Where such inexpensive means of communication are available to the district court, a remote witness should generally be expected to appear."); *United States v. Wallace*, 557 F. App'x 567, 570 (7th Cir. 2014) (explaining that, on remand, government could introduce evidence to meet Rule 32.1(b)(2)(C)'s balancing test, including an officer's testimony, presented "either in person or via video or telephone appearance"); *United States v. Leeth*, 471 F. App'x 755, 757 (9th Cir. 2012) ("Here, the importance of [the defendant's] interest in confrontation was significantly lessened by his opportunity to cross-examine the technician via telephone."); *United States v. Domenech*, No. 1:14-cr-00183 (JDB/GMH), 2017 WL 8894650, at *8 (D.D.C. Mar. 13, 2017) (recommending sustaining defendant's objection to admitting police and medical reports, in part, because government failed to consider "inexpensive means of communication," such as videoconferencing), *report and recommendation adopted*, No. CR 14-183 (JDB/GMH), 2017 WL 1653151 (D.D.C. May 2, 2017); *see also Shore v. Lockyer*, No. C02-2261 SI(PR), 2003 WL 1563991, at *6 (N.D. Cal. Mar. 25, 2003) ("*Morrissey*'s endorsement of the use of evidence like letters and affidavits—objects which cannot be cross-examined at all—convinces the court that the telephonic testimony here allowed adequate confrontation."); *cf. United States v. Stanfield*, 360 F.3d 1346, 1361 (D.C. Cir. 2004) (refusing to consider whether defendant's "due process might have been infringed by the substitution of the telephone examination for live testimony" after district court found defense counsel waived opportunity to examine the witness).

Third, and though not dispositive, the reliability of the procedure proposed by the government also lessens Mr. Wright's interest in an in-person confrontation. *See Jones*, 818

6

F.3d at 1100 (explaining that reliability is relevant to a defendant's interest in confrontation—*i.e.*, the first part of the balancing test). Here, the government's proposal provides a high degree of reliability. *See Sunrhodes*, 831 F.2d at 1537 (concluding pre-*Jones* reliability test for telephonic testimony satisfied when witness placed under oath, questioning heard simultaneously by court and counsel, and witness subjected to immediate cross-examination by defense counsel). The court will follow a similar procedure for Mr. Beckmann. Specifically, the court will place Mr. Beckmann under oath; the court and counsel will hear the questioning simultaneously; and, Mr. Wright's counsel may cross-examine Mr. Beckmann immediately after the government's questioning. The court thus is satisfied that the proposed procedure for presenting Mr. Beckmann's testimony also lessens Mr. Wright's confrontation interest.

The court next considers the government's explanation for not presenting Mr. Beckmann as a witness in person. The government asserts that Mr. Beckmann works in Greenville, Illinois, and, thus, is outside the state. The court may consider the burden on procuring an out-of-state witness's presence under the Rule 32.1 balancing test. *See, e.g.*, *United States v. Protsman*, 829 F.3d 978, 981 (8th Cir. 2016) ("For instance, the court will consider the expense and difficulty incurred for the travel of out-of-state witnesses."); *Leeth*, 471 F. App'x at 757. Although the government did not provide specific details on the time and costs to require Mr. Beckmann to testify in person, the court is satisfied that the government has put forward good cause in light of its proposed plan to elicit live testimony by telephone and permit cross-examination in the same fashion. And, balanced against Mr. Wright's confrontation rights, the court concludes that the government's good cause for not producing Mr. Beckmann in person—his out-of-state status—outweighs Mr. Wright's interest, considering the reliability of the procedures proposed by the government.

7

The court provides two caveats. First, at the April 15, 2019, evidentiary hearing, defense counsel said Mr. Wright preferred videoconference testimony over telephonic testimony. The court shares that preference. The government thus should confer with Mr. Beckmann and secure his appearance by videoconferencing, if feasible. In the alternative, the government may present Mr. Beckmann's testimony telephonically. Second, Mr. Wright may, of course, challenge aspects of Mr. Beckmann's testimony under Rule 32.1 at the hearing. If he persuades the court that some unanticipated nuance warrants an in-person cross-examination, he may renew his request then.

## II. Conclusion

The court concludes that the Rule 32.1(b)(2)(C)'s balancing test favors the government. And so, the court grants the government's "Motion for Order for Authorized Testimony by Telephone of Government Witness." Doc. 83.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's "Motion for Order for Authorized Testimony by Telephone of Government Witness," Doc. 83, is granted.

**IT IS FURTHER ORDERED THAT** the parties must confer and secure Mr. Beckmann's testimony by videoconference, if feasible. In the alternative, the government may present Mr. Beckmann's testimony telephonically.

**IT IS SO ORDERED.**

**Dated this 23rd day of May, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**