# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>SHANNON J. WRIGHT,<br><br>   Defendant. | Case No. 11-40024-01-DDC |

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Shannon J. Wright's Motion to Dismiss Petition to Revoke Supervised Release (Doc. 73). The government has submitted a Response (Doc. 77). And Mr. Wright has filed a Reply (Doc. 84). Also, the court conducted an evidentiary hearing on Mr. Wright's motion. Docs. 82, 88 (Minute Entries).

Mr. Wright's motion contends that he did not execute a knowing, intelligent, and voluntary waiver of his right to a hearing with assistance of counsel when the United States Probation Office ("USPO") sought to modify his supervised release. Specifically, the USPO recommended Mr. Wright begin his supervised release term at a residential reentry center ("RRC") for up to 120 days, and he signed a USPO form waiving his right to counsel and hearing on this modified condition. Notwithstanding the waiver, Mr. Wright's motion asserts that he had a Sixth Amendment right to consult with counsel before signing the waiver and a right to be present when the court modified his sentence. For the reasons explained below, the court denies Mr. Wright's motion.

**I.	Facts**

On July 23, 2012, the court sentenced Mr. Wright to 84 months in prison, followed by three years of supervised release after Mr. Wright pleaded guilty to possessing a firearm as a felon. *See* 18 U.S.C. § 922(g). Mr. Wright was scheduled for release from prison in October 2018.

In May 2018, as Mr. Wright's release date neared, the USPO declined to approve his proposed release plan. Mr. Wright had planned to live with his mother. But, convicted felons couldn't live in the building where she lived. So, the USPO proposed adding a new condition to Mr. Wright's supervised release. Specifically, the new condition required Mr. Wright to begin his supervised release term at an RRC for up to 120 days. This modification, the USPO argued, would provide Mr. Wright with a stable residence until he could establish his own residence.

The USPO then sent a Probation Form 49 ("Waiver of Hearing to Modify Conditions of Supervision") to Cliff Beckmann, Mr. Wright's case manager at the Bureau of Prisons institution that incarcerated Mr. Wright. The waiver would permit the court to impose the new condition without Mr. Wright receiving assistance of counsel or a hearing. Mr. Beckmann presented Mr. Wright with the waiver, and Mr. Wright signed it on May 8, 2018. On May 18, 2018, the court modified Mr. Wright's release conditions. Doc. 59.

On October 5, 2018, Mr. Wright began his supervised release term at Mirror Inc., an RRC in Topeka, Kansas. A week later, on October 12, 2018, Mr. Wright left the RRC without permission. In response, the government indicted Mr. Wright for escape,[1] and the USPO filed a petition to revoke Mr. Wright's supervised release.

---

[1] *United States v. Wright*, 18-cr-40109-DDC (D. Kan. 2019).

Mr. Wright's motion presents two reasons why the court should dismiss the petition to revoke supervised release. First, Mr. Wright challenges the waiver's validity. Mr. Wright contends the waiver is invalid because he didn't read it and Mr. Beckmann told him to sign the waiver if he wanted to go to an RRC. Second, Mr. Wright asserts the government violated his right to counsel under the Sixth Amendment and Criminal Justice Act because he did not speak with an attorney before signing the waiver. And, Mr. Wright contends, the Sixth Amendment also permitted him to be present when the court added the condition.

The court conducted an evidentiary hearing on Mr. Wright's motion across two days: April 15, 2019 (Doc. 82), and June 13, 2019 (Doc. 88). Both Mr. Wright and Mr. Beckmann testified.

**II. Discussion**

**A. Mr. Wright executed a knowing, intelligent, and voluntary waiver of his right to a hearing and assistance to counsel when he signed Probation Form 49.**

Criminal defendants maintain certain due process rights when their supervised release is modified or revoked. Specifically, the Fifth Amendment's due process protections are codified in Federal Rule of Criminal Procedure 32.1. *See United States v. Boultinghouse*, 784 F.3d 1163, 1171 (7th Cir. 2015); *United States v. Poindexter*, 444 F. App'x 580, 582 (3d Cir. 2011). That is, "[t]he court may modify . . . the conditions of a sentence of probation . . . pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation." 18 U.S.C. § 3563(c). But, Rule 32.1 imposes certain procedural requirements before the court can modify an offender's conditions of supervised release. Under Rule 32.1(c)(1), "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person

has the right to counsel and an opportunity to make a statement and present any information in mitigation."

But, a defendant may waive his rights to a hearing and assistance of counsel. Fed. R. Crim. P. 32.1(c)(2)(A) ("A hearing is not required if the person waives the hearing."); *United States v. Stocks*, 104 F.3d 308, 310 (9th Cir. 1997) ("The rights guaranteed by Fed. R. Crim. P. 32.1(b) are subject to waiver." (citing *United States v. Mezzanatto*, 513 U.S. 196 (1995))).

The Tenth Circuit has not squarely decided the standard a court must apply to assess the validity of a defendant's waiver under Fed. R. Crim. P. 32.1(c)(2)(A) (Modification of Supervised Release). But, the Circuit has suggested that a defendant must make a "knowing and voluntary" waiver of his right to a hearing to revoke supervised release. *See United States v. Gamez-Tapia*, 501 F. App'x 780, 782 (10th Cir. 2012) (concluding a full revocation hearing was not required because defendant "knowingly and voluntarily waived his right to a full hearing"). This standard agrees with the Ninth Circuit's standard for waiving a hearing to modify a defendant's supervised release. In *United States v. Stocks*, 104 F.3d 308 (9th Cir. 1997), the Ninth Circuit adopted the knowing, intelligent, and voluntary standard. *Id.* at 312. When a defendant challenges his waiver's validity—*i.e.*, it was not knowing, not intelligent, or not voluntary— the district court should make specific findings of fact. *See Stocks*, 104 F.3d at 312 ("The district court found as a matter of fact that Stocks' waiver was knowing, intelligent and voluntary, as governing law requires."); *United States v. Poe*, 220 F. App'x 446, 449 (8th Cir. 2007) (remanding case because neither the magistrate nor district court judge had made findings of fact about defendant's execution of the waiver form); *United States v. Horn*, 76 F. App'x 747, 749 (8th Cir. 2003) (same).

On the evidence presented by the parties, the court concludes that the waiver signed by Mr. Wright here was knowing, intelligent, and voluntary. First, Mr. Wright signed Probation Form 49, which provided a basis for Mr. Wright to make a knowing and intelligent waiver. The form (1) clearly outlined Mr. Wright's right both to a hearing and assistance of counsel; (2) specified the new RRC condition; and (3) explained that Mr. Wright must comply with the RRC's policies and procedures. *See United States v. McCray*, 672 F. App'x 593, 594 (7th Cir. 2016) (under the totality of the circumstances, finding defendant, when he signed Probation Form 49, had agreed to waive rights to a hearing and assistance of counsel for modification adding RRC condition); *United States v. Knauss*, 170 F. App'x 772, 773 (2d Cir. 2006) ("[T]he waiver agreement itself recites the rights [defendant] waived and the more onerous conditions to which he subjected himself, indicating in the absence of contrary evidence that [he] understood his rights and the action that would be taken against him. No contrary evidence was presented."); *United States v. Rockot*, No. CRIM. 97-33, 2014 WL 558781, at *3 (W.D. Pa. Feb. 13, 2014) (finding plain language of signed waiver sufficient when it expressly advised defendant of his right to a hearing with the assistance of counsel and defendant understood he was waiving those rights).

Mr. Wright contends that he did not sign Probation Form 49 voluntarily. At the hearing on April 15, 2019, Mr. Wright testified that Mr. Beckmann told him to sign the form—*i.e.*, "sign this form, and you'll get to go to an RRC." Mr. Wright also contended that Mr. Beckmann failed to tell him about the rights to assistance of counsel and a hearing. But, as Mr. Wright himself conceded on cross-examination, Mr. Beckmann handed him the form. And, Mr. Wright agreed he could have read it if he had wanted. Mr. Wright agreed that it was his fault he had not read Probation Form 49, and he wished he had read it.

5

Mr. Beckmann also testified at the evidentiary hearing, and the court found his testimony credible. Specifically, Mr. Beckmann remembered meeting with Mr. Wright on May 8, 2018, to sign the waiver. Mr. Beckmann stated that he handed the waiver to Mr. Wright, explained what it was, and asked Mr. Wright if he had any questions. Mr. Beckmann also said he gave Mr. Wright as much time as he needed to read the waiver. Mr. Wright did not ask any questions about the form. And, according to Mr. Beckmann, he did nothing to coerce Mr. Wright. In short, nothing from Mr. Wright or Mr. Beckmann's testimony even suggests that Mr. Wright did not sign the waiver voluntarily. The court thus concludes that Mr. Wright executed a valid waiver of his rights to a hearing and assistance of counsel.

### B. Neither the Criminal Justice Act nor the Sixth Amendment provides Mr. Wright with the right to consult with his counsel before the court modified his sentence.

#### 1. The Criminal Justice Act ("CJA")

Mr. Wright's motion contends that the CJA entitled him to have his attorney present *before* he signed the waiver. But, the Ninth Circuit rejected an identical argument in *Stocks*. The Ninth Circuit provided two reasons for its conclusions.

First, the CJA provides that "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c). But, the Ninth Circuit found it "apparent that the first statutory reference is only to appointment 'through appeal' and does not include probation." *Stocks*, 104 F.3d 308, 313 (9th Cir. 1997).

Second, the CJA also provides that "[r]epresentation shall be provided for any financially eligible person who . . . faces modification . . . of a term of supervised release." 18 U.S.C.

6

§ 3006A(a)(1)(E). But, the Ninth Circuit concluded that that "while representation must be provided to a person facing modification of a term of supervised release, the statute does not reference at which point representation must be provided." *Stocks*, 104 F.3d at 313. As such, Mr. Wright would not be entitled to the benefit of assistance of counsel unless he invoked his right to a modification hearing.

### 2. The Sixth Amendment

Mr. Wright contends that—notwithstanding the waiver—he maintained a Sixth Amendment right to consult with his attorney before the court modified his sentence. Also, Mr. Wright asserts, he had a right to be present when the court modified his sentence. Sixth Amendment protections govern "criminal prosecutions." U.S. Const. amend VI. And, as an initial matter, the Sixth Amendment does not apply to parole revocation hearings. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). So, it stands to reason, that the Sixth Amendment's right to counsel does not apply to supervised release modification hearings. But, Mr. Wright contends, the Sixth Amendment applies to modification hearings for two reasons. The court addresses both arguments below. Neither one is persuasive.

First, Mr. Wright contends, supervised release conditions constitute part of his sentence. And, criminal defendants are entitled to assistance of counsel during the sentencing phase of the proceeding. So, Mr. Wright asserts, any modification of his supervised release conditions, and thus his sentence, entitles him to counsel under the Sixth Amendment before he signed the waiver. Doc. 73 at 11 (citing *United States v. Vann*, 776 F.3d 746, 762 (10th Cir. 2015)).

The Sixth, Ninth, and Eleventh Circuits have rejected Mr. Wright's argument. In *Stocks*, the Ninth Circuit concluded that neither the Fifth nor Sixth Amendment provided defendant with the right to consult with an attorney before signing the waiver. *Stocks*, 104 F.3d at 312 ("The argument is, in effect, that before waiving counsel at a hearing [defendant] must have counsel to

7

advise him whether such a waiver is in his interest. Nothing in the Constitution or any statute or rule requires such a result."). And, the Sixth and Eleventh Circuits considered the proposed right under the Fifth Amendment, but concluded that defendants had no such right. *Latson v. United States*, 68 F. App'x 544, 552 (6th Cir. 2003) ("Like the defendant in *Stocks*, [defendant] contends a waiver of counsel without the assistance of counsel (or a hearing before a judge) is not valid, and waiver of a hearing, without a hearing (or assistance of counsel) on that waiver is not valid. Nothing in case law, statutes or rules supports such a proposition."); *United States v. Chambliss*, 766 F.2d 1520 (11th Cir. 1985) (declining to "stretch the bounds of due process" to require a separate hearing before a judge to determine if a waiver is knowing and voluntary). The court finds these cases persuasive, and it thus rejects Mr. Wright's argument that he was entitled to confer with counsel before signing the waiver.

Second, Mr. Wright contends that the modification at issue here—requiring him to spend as much as 120 days in the RRC—was an extension of his time in custody. Mr. Wright thus theorizes that extended time in "custody" equates to an extended sentence. And, the Sixth Amendment applies to sentencing, so, Mr. Wright reasons, he had a right to assistance of counsel and presence in the courtroom when the court "extended" his sentence by approving the RRC condition. In response, the government argues that modifying Mr. Wright's release to the community from imprisonment does not constitute a change in the overall sentence originally imposed by the district court.

The government has the better end of this argument. The modified condition of supervised release was not an extension of Mr. Wright's sentence. Certainly, adding time to Mr. Wright's term of imprisonment would impose a longer sentence. But, a longer term of imprisonment is not analogous to imposing—as a supervised release condition—an RRC

8

requirement.  Specifically, the Tenth Circuit has concluded that community confinement is not "imprisonment."  *See United States v. Horek*, 137 F.3d 1226, 1229 (10th Cir. 1998) ("A more plausible interpretation of the Guidelines is that community confinement, as a condition of probation, is not "imprisonment" within the meaning of the Guidelines[.]"); *see also United States v. Matta*, 777 F.3d 116, 123–24 (2d Cir. 2015) ("As a form of community confinement, therefore, residential reentry is neither a term of imprisonment nor a substitute for prison.").  The RRC condition thus did not extend Mr. Wright's sentence.  Because the modification did not extend Mr. Wright's sentence, Mr. Wright had no Sixth Amendment right to counsel before he signed the waiver.

The court's conclusion makes inapposite Mr. Wright's citation to *United States v. McCray*, 468 F.2d 446 (10th Cir. 1972).  There, the Tenth Circuit concluded that the district court had erred when it entered an order purporting to vacate an earlier order that had reduced defendant's term of imprisonment on an escape charge.  *Id.* at 450–51.  The attempt to remove the credit applied to defendant's escape charge—*i.e.*, adding back prison time—was invalid both because it augmented defendant's sentence and because it was entered outside defendant's presence (or his counsel).  *Id.*  In contrast, modifying Mr. Wright's supervised release term did not augment his sentence by imposing additional time in prison.

Likewise, Mr. Wright's reliance on *United States v. Foster*, 754 F.3d 1186 (10th Cir. 2014), is misplaced.  In *Foster*, the government charged defendant with escape from custody after he left an RRC without permission.  *Id.* at 1187.  Defendant asserted that he was not in "custody" as required for violation of the escape statute under 18 U.S.C. § 751(a).  *Id.*  The Tenth Circuit disagreed, concluding that "custody," as defined in the escape statute, encompassed defendant's residence at an RRC.  Contrary to Mr. Wright's argument, the court

9

did not hold that custody under the escape statute was analogous to extending defendant's sentence. In short, neither of Mr. Wright's arguments persuades the court that the Sixth Amendment entitled him either to consult with counsel before he signed the waiver or to be present when the court approved the modification.

**III. Conclusion**

For the reasons explained above, Mr. Wright's Motion to Dismiss Petition to Revoke Supervised Release (Doc. 73) is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Shannon J. Wright's Motion to Dismiss Petition to Revoke Supervised Release (Doc. 73) is denied.

**IT IS SO ORDERED.**

**Dated this 17th day of July, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**